IN OPEN COURT

NOV 15 2024

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES MARSHALL CESENA,<br><br>Defendant. | No. 2024 CR 223 |

## STATEMENT OF FACTS

1. The United States and the defendant, JAMES MARSHALL CESENA (hereinafter, "CESENA" or "the defendant") agree that the allegations in the Criminal Information and the facts set forth below with regard to CESENA are true and correct. The United States and CESENA further agree that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence.

2. From at least in or about 2016 through at least in or about 2023, in the Eastern District of Virginia and elsewhere, the defendant knowingly devised and intended to devise a scheme and artifice to defraud E.P. and Company A, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. For the purpose of executing the scheme described above, the defendant caused to be transmitted by means of wire communication in interstate commerce signals and sounds, including emails and financial records and documents, such as the following:

1

| Approximate Date | Description |
|---|---|
| September 17, 2021 | CESENA paid $1,500 from Company A's corporate debit card, ending in x8613, to a third-party located in the Eastern District of Virginia for a personal expense without authorization Company A and/or E.P. |
| June 18, 2020 | CESENA emailed Company A's accountant, who prepared tax returns for Company A and E.P., and falsely represented that he owned 50% of Company A. At the time of the email, Cesena was located in North Carolina and Company A's accountant was located in the Eastern District of Virginia. |

All in violation of Section 1343 of Title 18 of the U.S. Code.

I. **RELEVANT INDIVIDUALS AND ENTITIES**

3. In or about September 2015, E.P. formed a business, Company A, with the defendant as her partner in the Eastern District of Virginia. Company A was structured as an S-Corporation,[1] and provided content strategy, blog posts, white papers, case studies, and infographics for business clients. E.P. owned 55% of the Company A and CESENA owned the remaining 45%. At no point from 2015 through the present did the ownership structure or percentages change. E.P. paid approximately $29,168 to capitalize the company in 2015.

4. While Company A employed occasional contractors, its two principal employees were E.P. and CESENA. From in or about September 2015 to in or about August 2023, E.P. served as Chief Executive Officer and defendant served as Chief Financial Officer ("CFO"). Both E.P. and defendant were broadly responsible for finding clients, managing client relationships, and developing content.

5. As CFO, CESENA managed Company A's financial matters. He had signature authority on and controlled Company A's bank and checking account(s). He had access to and was

---

[1] S corporations are corporations that elect to pass corporate income, losses, deductions, and credits through to their shareholders for federal tax purposes. Shareholders of S corporations report the flow-through of income and losses on their personal tax returns and are assessed tax at their individual income tax rates.

responsible for maintaining and updating Company A's bookkeeping software, for providing financial updates to E.P., and for providing financial information to Company A's accountant. E.P. relied on CESENA to provide accurate information about Company A's finances and to manage Company A's finances consistent with his fiduciary obligations.

## II. THE DEFENDANT DEFRAUDED COMPANY A AND E.P.

6. From 2016 to 2023, the defendant used his position as CFO of Company A to unlawfully enrich himself. While the defendant was entitled to receive a salary of $75,000 a year, he took advantage of his position as CFO to embezzle approximately one million dollars. He did so by directing transfers from Company A's checking account to his personal accounts that were in excess of his legitimate salary, by charging personal expenses to Company A's checking account(s) and credit card(s), and by charging personal expenses to a credit card in the name of E.P.

7. Focusing first on the direct transfers, between 2016 and 2023, the defendant directed hundreds of thousands of dollars each year to his personal accounts. During this same period, CESENA told E.P. that Company A had cash flow issues and was in financial difficulty. Because of these misrepresentations, E.P. periodically had to delay or forego receiving her salary. In most years, this resulted in E.P. receiving less in distributions than she was entitled to and less than the defendant, her minority partner. The following chart summarizes the direct transfers that CESENA received:[2]

---

[2] The parties agree that, although these numbers are preliminary and subject to modification, they represent, to the parties' best knowledge, the most accurate calculation of direct transfers made to CESENA from Company A during the timeframe of 2016 through 2023.

3

| Year | CESENA Direct Transfers |
|---|---|
| 2016 | $117,079 |
| 2017 | $134,969 |
| 2018 | $125,578 |
| 2019 | $104,350 |
| 2020 | $163,790 |
| 2021 | $167,825 |
| 2022 | $205,493 |
| 2023 | $59,105 |
| Total | $1,078,188 |

8. The defendant additionally made hundreds of thousands of dollars in personal purchases, which he either debited from Company A's corporate account(s) or charged to two corporate credit cards. This included tens of thousands of dollars for vacations, travel and airfare, amusement parks, school, home improvements, living expenses, and other miscellanea. The following chart summarizes the personal expenses charged in each year:[3]

| Year | CESENA Expenses on Corporate Bank Account | CESENA Expenses on Corporate Credit Card |
|---|---|---|
| 2016 | $18,900 | $2,007 |
| 2017 | $19,028 | $10,225 |
| 2018 | $8,835 | $11,662 |
| 2019 | $57,346 | - |
| 2020 | $22,155 | $36,697 |
| 2021 | $78,219 | $26,889 |
| 2022 | $152,824 | $59,956 |
| 2023 | $120,705 | $39,488 |
| Total | $478,012 | $186,924 |

9. Finally, from 2020 to 2023, CESENA charged approximately $75,000 to a credit card that he had caused to be issued in E.P.'s name.

10. In total, as detailed in the following chart, from 2016 to 2023, CESENA embezzled approximately one million dollars from E.P. and Company A:

---

[3] The parties agree that, although these numbers are preliminary and subject to modification, they represent, to the parties' best knowledge, the most accurate calculation of personal expenses made by CESENA from Company A's corporate bank account and corporate credit card during the timeframe of 2016 through 2023.

| Total Embezzled Income Received by Cesena (2016 – 2023) | | |
|---|---|---|
| | **Description** | **Total** |
| **Distributions** | Direct Transfers | $1,078,188 |
| | CESENA's Personal Expenses on Company A's Corporate Bank Account(s) | $478,012 |
| | CESENA's Personal Expenses on Company A's Corporate Credit Card(s) | $186,924 |
| | CESENA's Personal Expenses on E.P. Credit Card | $73,754 |
| | Total | **$1,816,878** |
| **Authorized Income** | CESENA Salary[4] | $621,000 |
| **TOTAL EMBEZZLED INCOME** *(Total Distributions - Authorized Income)* | | **$1,195,878** |

### III. THE DEFENDANT'S EFFORTS TO MASK HIS FRAUD

11. The defendant masked his fraud through a variety of schemes. Foremost, he generated false financial statements, which he provided to E.P. and their business consultant. These false income and expense reports did not accurately report Company A's gross receipts or expenses, nor did they report the true distributions that the defendant was taking from Company A's checking account.

12. For example, in or about March 2017, April 2017, and May 2017, the defendant produced a snapshot of Company A's monthly income and expenses to E.P. in the Eastern District of Virginia, in which he listed his monthly salary as $6,250. However, between March and May 2017, the defendant's transfers from and personal charges to Company A's checking account exceeded $68,000 with the defendant taking more than $16,000 in excess each month.

---

[4] As set forth above, CESENA was entitled to receive a salary of $75,000 annually from 2016 to 2022 and his salary was increased to approximately $120,000 in 2023 but he only worked for Quatrain for eight months of that year.

5

13. In addition to providing E.P. with false financial statements, the defendant also masked his personal expenditures in Company A's accounting software by labeling his personal expenditures as legitimate corporate expenditures. For example, sizeable payments for alcohol and cruise packages were reported as "Office Expenses."

14. The defendant then provided these fraudulent books and records to Company A's tax preparer. The financial data underreported Company A's total gross receipts and true expenses, and further hid the defendant's true income and the amount that he had misappropriated. The information was then packaged into corporate tax returns.

IV. **THE DEFENDANT'S FRAUDULENT CORPORATE LOANS**

15. Because of the defendant's sizeable distributions from corporate accounts, Company A had chronic cash-flow issues such that Company A did not have sufficient funds to pay for its legitimate business expenses, such as E.P.'s salary. To help mask the issue and alleviate the problem before it was noticed by E.P., CESENA applied for and took out high-interest loans in the name of Company A and/or E.P., without E.P.'s knowledge or consent.

16. Because individuals with a minority ownership position are not able to independently encumber companies, CESENA misrepresented to loan officers from at least two companies, in May 2019 and July 2022 respectively, that he owned as much as 75 or 80% of Company A. This enabled him to apply for loans on behalf of Company A, even though he had a minority stake in Company A.

17. In total, as summarized by the table below, CESENA applied for and received at least five loans/lines of credit on behalf of Company A. CESENA submitted these applications without E.P.'s awareness or authorization. Of these five loans, Company A ultimately defaulted on at least one of them and remitted payments to the others from Company A's corporate accounts.

| Company | Applicant | Approval Date | Amount |
|---|---|---|---|
| Loan Company 1 | CESENA and Company A | July 1, 2016 | $16,000 |
| Loan Company 2 | CESENA and Company A | Unknown | $45,000 |
| Loan Company 3 | CESENA and Company A | July 27, 2022 | $44,105 |
| Loan Company 3 | CESENA and Company A | February 28, 2023 | $19,532 |
| Loan Company 3 | CESENA and Company A | July 5, 2023 | $17,682.40 |
| TOTAL | | | $142,319.40 |

### V. THE DEFENDANT'S EFFORTS TO IMPERSONATE E.P. AND STEAL HER IDENTITY

18. The defendant applied for loans for Company A by fraudulently claiming to be the majority owner.

19. Towards this end, in or about 2019, the defendant created an email account with Company A's domain in the name of E.P. (hereinafter, "fake E.P. email account"). The defendant thereafter used the fake E.P. email account to apply for business loans on behalf of Company A, as well as to monitor E.P.'s credit. The defendant undertook these steps without E.P.'s knowledge or consent. The following are examples in which CESENA utilized E.P.'s name, date of birth, social security number, or other personal identifier without her authority to fraudulently open accounts or obtain money:

   A. On or about December 11, 2020, the defendant fraudulently created a profile on a credit monitoring site in E.P.'s name and using E.P.'s address. This profile allowed the defendant to monitor E.P.'s credit score and open lines of credit. The defendant also listed the fake E.P. email account as the email address on the credit monitoring site.

   B. On or about May 31, 2019, the defendant fraudulently used the fake E.P. email account to digitally receive, sign, and submit a loan application in E.P.'s name. The defendant used E.P.'s date of birth and social security number on this loan application.

C. On or about January 7, 2021, the defendant fraudulently signed a Business Line of Credit application at a national bank for $35,000 in E.P.'s name and signature.

D. On or about January 26, 2021, the defendant fraudulently submitted an online business loan application to a loan company in E.P.'s name and using E.P.'s date of birth and address and the last four digits of E.P.'s social security number. The defendant listed the fake E.P. email address as the email address on the application. Pursuant to this application, an employee of the loan company emailed the fake E.P. email address. The defendant replied to the employee using the fake E.P. email address and purporting to be E.P.

E. Additionally, on or about March 28, 2020, the defendant applied for a credit card at a national bank in E.P.'s name and used E.P.'s social security number, date of birth, and address in the Eastern District of Virginia on the credit card application. The defendant also used the fake E.P. email account as the email address on the E.P. credit card. The defendant charged personal expenses to the E.P. credit card as summarized above. As a result, the defendant caused a loss of at least $73,754 between 2020 and 2023.

20. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

21. The actions of the defendant, as recounted above, were in all respects knowing, willful, and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,
Jessica D. Aber
United States Attorney

Date:

By: _____
Jack Morgan
Assistant United States Attorney
Likhitha Butchireddygari
Special Assistant United States Attorney
Department of Justice Tax Division

***Defendant's Signature***: After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, JAMES MARSHALL CESENA, and the United States, I hereby stipulate that the above statement of facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 10/29/2024

_____
JAMES MARSHALL CESENA
Defendant

11/15/24

***Defense Counsel Signature***: I am counsel for the defendant in this case. I have carefully reviewed the above statement of facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 10/29/24

_____
Sebastian Norton, Esq.
Counsel for the Defendant

11/15/24

9